# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 99 CR 357-1 |
| TRENTON JACKSON, | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

In 2000, Trenton Jackson pleaded guilty in federal court to a felony and was sentenced to 135 months in prison. Jackson now moves for post-conviction relief pursuant to 28 U.S.C. § 2255, alleging that he was denied effective assistance of counsel because his attorney had an actual conflict of interest: specifically, Jackson asserts that an unindicted coconspirator paid counsel for his services representing Jackson. Defendant stands by his guilty plea, but seeks resentencing as a remedy for the alleged constitutional violation. For the reasons given below, Defendant's motion is denied.

## FACTUAL BACKGROUND

On March 3, 2000, Jackson pleaded guilty to conspiracy to possess with intent to distribute cocaine. (Minute Order [68].) In his written plea agreement, Jackson waived his right to file an appeal or seek collateral relief under 28 U.S.C. § 2255. (Plea Agreement [67].) The waiver did allow Defendant to seek collateral review regarding a claim of "ineffective assistance of counsel [] which relates directly to this waiver or its negotiation." (*Id.*) Defendant's attorney during the plea negotiations and at his sentencing was Richard Mottweiler, who was initially retained to represent Defendant by Luther Rogers. (11/17/06 Tr. at 34:22-25.) After Rogers paid the initial retainer, Jackson's family paid the remaining legal fees to Mottweiler. (*Id.* at 29:22-24.) The parties have stipulated that Rogers, who Jackson has identified as his drug supplier, was never charged in this

case. (*Id.* at 17:20-22; 9:7-8.)

Prior to sentencing, but after he entered his guilty plea, Jackson made a proffer to Assistant United States Attorney ("AUSA") Zachary Fardon. (*Id.* at 38:11-12, 42:8-9.) Mottweiler maintains that he talked to Jackson prior to Jackson's guilty plea about proffering and cooperating with the government, but Jackson was "adamant about wanting to go ahead and try to win the case" (*id.* at 40:25-41:4; 41:9-15); Jackson claims, however, that Mottweiler did not mention anything concerning a proffer conference until after he had already pleaded guilty. (*Id.* 13:22-24.) In any event, the proffer appears to have had no substantive effect on Jackson's sentencing. The sentencing hearing was held on August 2, 2000. As reflected in the plea agreement, Jackson's base offense level under the Sentencing Guidelines was calculated on the quantity of cocaine found at the time of the arrest. The agreement reserved Jackson's right to make two arguments: First, Jackson disputed the applicability of Guideline § 2D1.1(b)(1), which increases the base level on a finding that the defendant possessed a firearm during the crime. Second, Jackson argued for a downward departure based on the "safety valve." *See* U.S. SENTENCING GUIDELINES MANUAL § 5C1.2; 18 U.S.C. § 3553(f). The court rejected both of Defendants' arguments, finding that a gun found during a search of Defendant's apartment after his arrest could be attributed to Defendant and the weapon precluded application of the "safety valve." The court sentenced him to 135 months, a sentence at the bottom of the Guideline range, because Defendant "displayed sincere remorse and acceptance of responsibility." (Sentencing Order at 6.)

Jackson filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 on July 30, 2001. Over the next several years, various grounds for this motion were proposed and withdrawn by Defendant. Finding potential merit in Plaintiff's claim that he was denied effective assistance of counsel due to Mottweiler's alleged conflict of interest with Rogers, the court appointed counsel

2

for Jackson and held two evidentiary hearings on the matter.[1]

**DISCUSSION**

Defendant does not seek a new determination of guilt, but only resentencing. The federal post-conviction statute, 28 U.S.C. § 2255, allows federal prisoners to challenge their sentences on the ground "that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Jackson claims that he is entitled to resentencing because attorney Mottweiler possessed a conflict of interest due to his relationship with Rogers. To succeed on this claim, Defendant must show that there was an actual conflict of interest and that he was adversely affected as a result.[2] *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). As explained below, the court concludes that neither of these elements is met.

**I.  Actual Conflict**

Jackson must first establish the existence of an actual conflict of interest. "An actual conflict of interest exists if the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia*, 109 F.3d at 395 (quotations omitted). According to Jackson, Mottweiler did not act in Jackson's best interests because Mottweiler had been paid by Rogers and was mainly interested in protecting Rogers rather than advancing Jackson's interests. According to Defendant, Mottweiler's motivation to help Rogers is most clearly manifested by Mottweiler's failure to advise Defendant that he should go to a proffer session with

---

[1] This appears to be the sole remaining claim to be decided by this court, as it was the only issue raised at the evidentiary hearings and the only issue discussed in the parties' most recent briefs. (*See* Gov't Br. [150] at 2 ("It is the government's understanding that defendant's claim is now limited to his constitutional claim of an actual conflict of interest in the negotiation of the plea.")

[2] Jackson also could have proceeded on a theory that his attorney possessed a *potential* conflict of interest and he was prejudiced by the potential conflict. *Stoia v. United States*, 109 F.3d 392, 395 (7th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 688 (1984)). In fact, In fact, Defendant proceeds under the actual conflict theory, as his allegations center around his "belief of a relationship between Rogers and Mottweiler." (Def.'s Post Hearing Br. at 3.)

3

a government attorney—which may have produced a lighter sentence—until after the plea agreement had already been reached. Additionally, while he admittedly has no direct evidence of such an arrangement, Defendant believes that Rogers was also a client of Mottweiler's. (Def.'s Post Hearing Br. at 3.) Mottweiler disputes Defendant's assertions. Mottweiler testified that he did in fact mention the possibility of a proffer to Defendant early on, but that Defendant was uninterested and wanted to fight the charges. Mottweiler denies, further, that Rogers was his client, and states that to the best of his recollection, his only financial interaction with Rogers was the one-time payment of Jackson's retainer. (11/17/06 Tr. at 39:2-17.)

Having observed Jackson and Mottweiler during their testimony at the evidentiary hearing in this matter, the court finds Mottweiler's version of events more credible. By Jackson's own admission, Jackson's family, not Rogers, paid most of Jackson's legal fees. Mottweiler testified credibly that Rogers was never a client of his and that his only interaction with Rogers was the one-time payment of Jackson's fee; Jackson has presented no evidence to the contrary, outside of speculation. Finally, the court believes Mottweiler's assertion that he did discuss the possibility of a proffer with Jackson prior to the plea agreement and that Jackson was uninterested; notably, it is undisputed that after Mottweiler did set up the proffer, Jackson provided incriminating information about Rogers. These circumstances are flatly inconsistent with Defendant's theory; if Mottweiler were genuinely interested in protecting Rogers, he would not have set up the proffer or advised Defendant to disclose that Rogers was his supplier. The court concludes that Mottweiler did not have an actual conflict of interest when he was representing Jackson.

## II. Adverse Effect

An adverse affect exists when "but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different." *Stoia*, 109 F.3d at 395 (quotations omitted). As explained above, the court concludes that Mottweiler did not have an actual conflict of interest. Even if he did, however, there is no reasonable likelihood that

Jackson would have received a different sentence absent the purported conflict. Jackson claims that he would have cooperated with the government earlier and have been able to help them pursue Rogers, if he had been given the opportunity to proffer earlier; but former AUSA Fardon's testimony casts serious doubt on this claim. Fardon pointed out that Jackson was of limited use in pursuing Rogers because the United States Attorney's Office generally does not indict subjects in narcotics cases based on past evidence of wrongdoing, but prefers to obtain more recent evidence; since Jackson had already been arrested and was under indictment, he would have been of little value setting up a deal that might have assisted in an investigation of Rogers. (12/15/06 Tr. at 10-11.) Second, Fardon stated that based on his proffer session with Jackson, Jackson had "very significant credibility problems," including the fact that Jackson had not mentioned Rogers in his confession after he was arrested. (*Id.* at 19.)

Finally, the court notes that Mottweiler made reasonable arguments before the plea agreement and at the sentencing hearing to advance his client's interests. He filed a number of motions and argued "for quite some length" at the sentencing hearing that the weapons enhancement should not apply. (11/17/06 Tr. at 55:22-56:1.) The court concludes that even if Mottweiler was conflicted because of some obligation owed to Rogers, and even if that conflict prevented Mottweiler from advising Jackson to proffer prior to entering a plea agreement, there is no a reasonable likelihood that Jackson's sentence would have been different absent that conflict.

## **CONCLUSION**

For the reasons given above, Defendant's motion pursuant to 28 U.S.C. § 2255 is denied.

ENTER:

Dated: December 9, 2008

_____
REBECCA R. PALLMEYER
United States District Judge